GOINS *v.* STATE.

Crim. 4059

Opinion delivered October 11, 1937.

*V. N. Carter,* for appellant.

*Jack Holt,* Attorney General, and *John P. Streepey,* Assistant, for appellee.

GRIFFIN SMITH, C. J.  Section 2668 of Crawford & Moses' Digest provides that "Any person who shall vend, sell, or otherwise dispose of any lottery ticket * * * shall be deemed guilty of a misdemeanor and liable to indictment, and on conviction thereof shall be fined in any sum not less than fifty dollars nor more than five hundred dollars."

Appellant was arrested in North Little Rock by officers Hunter and Blankenship and in his possession were found seventeen tickets of two distinct characteristics.  Eight of these tickets are obviously carbon copies 2½ x 3½ inches, written with pencil, and taken from a pad of blank news print paper.  They are of uniform size and were apparently taken from the same pad.

Various letters and figures appear thereon. These, although legible, are meaningless unless explained.

The remaining nine tickets are 1⅞ inches wide by 5⅞ inches in length. They, too, appear to be of common news or pulp paper. These exhibits carry the indorsement: "Frisco; Class No. 37 p. m. 890 Clearing House." There are other numbers on the slips, which appear to have been made with a rubber stamp.

Appellant was tried in the municipal court of North Little Rock and fined $50. On appeal to circuit court there was a jury trial, a verdict of guilty, and a fine of $200.

This appeal questions sufficiency and admissibility of evidence offered by the state, and the correctness of instruction No. 2. The testimony is presented here in an agreed statement of facts.

Officer Hunter testified that when appellant was arrested May 18, 1937, the tickets referred to *supra* were found in his possession. "These tickets were carbon copies of eight tickets used in playing the policy game and eight winning number pay-off tickets of the Frisco House. I have talked with a number of policy writers and buyers over a period of several months and have made a study of the game. In this manner I have learned the details. Two copies of each ticket are sold, the original being given to the buyer, and the carbon copy, such as those introduced in evidence, is retained by the seller. I only know from my study of the game and from talking with policy operators and buyers that a buyer receives an original copy and the seller retains a copy. I did not see the defendant sell these or any other tickets to any person."

Officer Blankenship's testimony was to the same effect, except that he calculated, in the presence of the jury, that cost of the original tickets corresponding with copies in evidence was $7.15.

The testimony was objected to on the ground that the officers lacked means of knowledge sufficient to qualify them to answer the questions, and exceptions were duly saved.

Appellant's testimony was a denial that he had sold any lottery tickets. He claimed that the tickets found in his possession had been purchased from time to time, and said that, when arrested, he had only 70 cents in his possession. On cross-examination appellant could not name anyone from whom he made purchases. He did not remember when the purchases were made, or whether in Little Rock or North Little Rock.

Instruction No. 2 reads as follows: "If the defendant had lottery tickets and they were possessed for the purposes of sale, then it would be a violation of § 2668, Crawford & Moses' Digest. To vend means to make an object of trade, especially to offer for sale or to peddle or to possess for the purpose of sale."

The instruction is erroneous. Section 2668 applies only to one who "shall vend, sell, or otherwise dispose of any lottery ticket." One who possesses such tickets for the purpose of sale has not violated the prohibition against "vending, selling, or otherwise disposing of any lottery ticket."

Webster's dictionary defines "vend" as follows: "To transfer to another for a pecuniary equivalent; to make an object of trade, especially by hawking or peddling; to sell; as to vend fruit." The expression "to make an object of sale," as used in the definition, obviously means that the object is the subject-matter of the sale. It does not mean that if an article has been made for the purpose of being sold, there has been a vending.

In Words and Phrases (1st Ed., p. 7287) the following is quoted: " 'Vend' means the habit of selling and offering for sale. Selling and exposing to sale are not coextensive. The former may include the latter; but a mere exposure to sale, i.e., with intent to sell or for the purpose of selling, is not only not equivalent to a sale, but, as regards the patentee, may be attended with wholly different consequences."

For the error in giving instruction No. 2, the judgment is reversed, and the cause remanded for a new trial.